# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| SHAVONN BRANSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CAUSE NO.: 4:15-CV-87-TLS |
| | ) |
| ST. ELIZABETH SCHOOL OF NURSING, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

The Plaintiff, Shavonn Branson, alleges that the St. Elizabeth School of Nursing (the School) discriminated against her on the basis of her African-American race when it dismissed her as a student. The School maintains that the reason for the dismissal was the Plaintiff's failure to meet its academic requirements, and has moved for judgment as a matter of law in its favor. The Plaintiff alleges that the School's stated reason is a pretext for race discrimination.

Because the Plaintiff has not presented the Court with sufficient evidence on which a reasonable jury could rely to find in her favor, the Court will grant the School's Motion for Summary Judgment [ECF No. 30].

## PROCEDURAL BACKGROUND

On October 1, 2015, the Plaintiff filed a Complaint against the School, alleging that she was subjected to race discrimination in violation of Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, *et seq.* (Count 1), and 42 U.S.C. § 1981 (Count 2). In Count 3, the Plaintiff alleges that the School subjected her to a hostile learning environment in violation of Title VI. Finally, Count 4 alleges that the School was in breach of a contract when it required that she

achieve a minimum passing score that was higher than when she first applied for and was accepted to the School's nursing program.

On February 14, 2017, the School filed its Motion for Summary Judgment [ECF No. 30] requesting judgment as a matter of law on all of the Plaintiff's claims. The Plaintiff responded [ECF No. 40], but did not address the breach of contract claim or make reference to a hostile educational environment or § 1981.[1] The Plaintiff's sole argument was that a jury should decide whether her dismissal violated Title VI because it was based on her race.

The Defendant filed a Reply Brief [ECF No. 43], in addition to a Motion to Strike [ECF No. 44] directed at the Declaration Under Oath of Shavonn Branson [ECF No. 41-2]. The Declaration, which the Plaintiff had attached as evidence in opposition to the Motion for Summary Judgment, contains no signature. Both the signature and the date lines have been left blank.

## STATEMENT OF FACTS

The School is a private religious affiliated institution that provides education to students in nursing. The Plaintiff first attended classes in the School's nursing program in August 2011. When she enrolled, the Plaintiff received a copy of the Student Nurse Handbook. The title page of the 2011-2012 Handbook advised students of the following:

> The Nursing Program reserves the right to change requirements in the program

---

[1] The Court considers the Plaintiff's silence with respect to the School's arguments regarding breach of contract, hostile environment, and § 1981 to be an abandonment of those claims. *See Palmer v. Marion Cty.*, 327 F.3d 588, 597–98 (7th Cir. 2003) (deeming the plaintiff's negligence claim abandoned because he failed to delineate it in his brief to the district court in opposition to summary judgment); *Laborers' Int'l Union v. Caruso*, 197 F.3d 1195, 1197 (7th Cir. 2003) (stating that arguments not presented to the district court in response to a summary judgment motion are waived).

> related to completion, prerequisites, course requirements, program
> requirements/policies, fees, tuition, scheduling, etc. A student who has
> discontinued program studies for a full semester or more is regarded as
> re-entering the School of Nursing when resuming studies and will be held to the
> requirements current at re-entrance.

(Jezierski Aff. ¶ 22, ECF No. 31-2 at 67.) The School's Faculty Governance Committee has the authority to change school policies and procedures.

On January 9, 2014, John R. Jezierski (Deacon Jezierski), the Director of the School of Nursing, disseminated by email the announcement of a new policy. Pursuant to this policy change, effective January 8, 2014, a student who failed to achieve a "C" or "P" passing grade or better in a required nursing major, non-nursing, clinical nursing or nonclinical nursing course would be allowed to repeat that course. Failure to achieve a "C" or "P" passing grade on a second attempt of the same course would result in dismissal from the program major in nursing. The School considers a withdrawal from a course as failing the course.

On March 21, 2014, Deacon Jezierski sent an email announcing a change to the grading and graduation requirements that had been approved by the Faculty Governance Committee. Pursuant to the policy, the passing standard for nursing major courses was changed from 75% to 80% effective August 4, 2014. The email also informed students that to achieve a passing grade, a student must have an overall rounded test average of 80% in a course and achieve an overall final course grade of 80%. All students, including the Plaintiff, were notified that the new passing standard would commence on the first day of the 2014-2015 academic year.

The Plaintiff's academic record while at the School includes various terms of probation. Her transcript also contains a "W" grade for two classes she withdrew from during the 2013-2014 Fall Term. One of the classes the Plaintiff received a "W" in was Complex Deviation

Health Class Nursing 344A (NUR 344). The Plaintiff also audited a class during the 2013-2014 Fall Term.

Classes for the 2013-2014 Spring Term began on January 13, 2014. The Plaintiff was enrolled in NUR 344 for this term, but withdrew during the drop/add period so that no grade was recorded. The Plaintiff audited courses during the 2013-2014 Spring Term, but did not withdraw from the School.

The Plaintiff completed a course during the 2014-2015 Fall Term, which was after the effective date of the new minimum passing grade requirements. For the 2014-2015 Spring Term, which began in January 2015, she again enrolled in NUR 344 . Professor Santee's syllabus for the course provided that a student needed an overall test average of 80% to pass the course. Students achieving an 85% or greater nonrounded exam average prior to the final exam were not required to take the final exam. The Plaintiff was required to take the final exam because her overall test average prior to the final exam was below an 85%. The Plaintiff received tutoring, but her overall test average after taking the final exam was 78%. Accordingly, the Plaintiff did not receive a passing grade in NUR 344 for the 2014-2015 Spring Term.

The Plaintiff was dismissed from the School of Nursing because she failed to pass Course NUR 344 after two attempts. After the Plaintiff was notified of the dismissal, she submitted a Letter of Appeal to the Administrative Council and requested to be reinstated. The Plaintiff was advised that the Administrative Council would hear her request on May 15, 2015, and that she had the option to attend the hearing. On May 15, the nine-member council considered the Plaintiff's letter of appeal, in which she argued that the 75% passing standard in effect when she enrolled in August 2011—not the 80% passing standard that took effect at the start of the

2014-2015 calendar year—should apply to the 78% score she received in NUR 344. The Plaintiff did not attend the hearing. The Administrative Council denied the Plaintiff's request for appeal and she was dismissed from the School due to poor academic achievement.

**ANALYSIS**

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is the moment in litigation where the non-moving party is required to marshal and present the court with evidence on which a reasonable jury could rely to find in his favor. *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010). Material facts are those that are outcome determinative under the applicable law. *Smith v. Severn*, 129 F.3d 419, 427 (7th Cir. 1997).

The Plaintiff has invoked Title VI, which provides in relevant part that no person shall, "on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity" covered by Title VI. *See* 42 U.S.C. § 2000d. The statute allows a private plaintiff to obtain both injunctive relief and damages when intentionally discriminated against by a federal-funds recipient on account of race, color, or national origin. *Alexander v. Sandoval*, 532 U.S. 275, 280 (2001). The Court reads the Plaintiff's submission to be alleging that the School intentionally discriminated against her on the basis of her race when it dismissed her from the nursing program. (*See* Pl.'s Resp. in Opp'n 11, ECF No. 40 ("Based on this evidence, a reasonable fact-finder could conclude that the

School of Nursing's decision to dismiss Branson was based on her African American race."); Compl. ¶ 41, ECF No. 1 (alleging that the Defendant's actions in violation of Title VI were "intentional").) In her Response in Opposition to the Defendant's Motion for Summary Judgment the Plaintiff appears to advance a new theory when she asserts that Title VI "reaches unintentional, disparate-impact discrimination as well as deliberate racial discrimination." (Pl.'s Resp. 6, ECF No. 40 (citing *Guardians Ass'n v. Civil Serv. Comm'n of N.Y.*, 463 U.S. 582, 593 (1983).) However, the Court does not find that the Plaintiff intended, by this assertion, to convert her Title VI claim into a disparate-impact claim, particularly where none of her evidence is directed at showing that a facially neutral policy has a racially disproportionate impact on minorities, and where there is no right to recover compensatory relief for unintentional violations of Title VI. *See Guardians Ass'n*, 463 U.S. at 607.

When a plaintiff responds to a motion for summary judgment on an intentional discrimination claim by relying on the burden-shifting framework created by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), the court should first assess whether the plaintiff has established a prima facie case of discrimination. *David v. Bd. of Trs. of Cmty. Coll. Dist. No. 508*, 846 F.3d 216, 224 (7th Cir. 2017). When the plaintiff does not present her argument in opposition to summary judgment in those terms, the direct method of proof is the "default rule." *Bagwe v. Sedgwick Claims Mgmt. Servs., Inc.*, 811 F.3d 866, 880 (7th Cir. 2016) (quoting *Morgan v. SVT, LLC*, 724 F.3d 990, 997 (7th Cir. 2013)). Under that method, the test is "whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the [adverse action]." *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016) (setting out the standard for avoiding summary judgment

on discrimination claim under the direct method of proof); *Bass v. Joliet Pub. Sch. Dist. No. 86*, 746 F.3d 835, 840 (7th Cir. 2014) ("[T]he fundamental question at the summary judgment stage is simply whether a reasonable jury could find prohibited discrimination."). Here, then, the question before the Court is whether the evidence as a whole would permit a reasonable factfinder to conclude that the Plaintiff was dismissed from the nursing program on the basis of her race.

The Plaintiff's claim is relatively straightforward. There is no dispute that the School is a federally assisted program in connection with federal student aid. The School maintains that the decision to dismiss the Plaintiff from its nursing program was due to her poor academic achievement, specifically her failure to pass NUR 344 after two attempts. The Plaintiff argues that her score of 78% should have been considered passing. She admits that the passing standard at the time she enrolled in the course was 80%. However, she insists that the 75% standard from when she first entered the nursing program during the Fall 2011-2012 semester was still applicable to her. According to the Plaintiff, the School's policy contemplates this very thing and, because the School failed to follow its policy, it reveals that the School's reason is a pretext. Further, she submits that there is other evidence of the School's discriminatory treatment of African Americans that would allow a fact finder to conclude that the real reason for the School's action was race.

Having considered the totality of the evidence, the Court finds that, even when the Plaintiff is given the benefit of reasonable inferences, she has not set forth sufficient evidence that would allow a reasonable jury to infer race discrimination was behind the School's decision. To begin with, her claim of pretext is predicated on an invalid interpretation of the School's

7

policy. A defendant's deviation from stated procedures and policies can provide circumstantial evidence of discrimination, *cf. Hobgood v. Ill. Gaming Bd.*, 731 F.3d 635, 645 (7th Cir. 2013) (noting that significant departure and deviations from established policies and practices could be circumstantial evidence of unlawful motives), but there is no evidence that any deviation took place here.

The title page of the Student Nurse Handbook provides that "[t]he Nursing Program reserves the right to change requirements in the program related to completion, prerequisites, course requirements, program requirements/policies, fees, tuition, scheduling, etc." A second sentence advises that "[a] student who has discontinued program studies for a full semester or more is regarded as re-entering the School of Nursing when resuming studies and will be held to the requirements current at re-entrance." The Plaintiff argues that these two sentences can be interpreted to mean that the school will not change its program studies for students who remain continually enrolled. The Plaintiff admits that under the first sentence of the policy the School reserves the right to change graduation requirements. This is precisely what the School did when it changed its passing standard from 75% to 80% effective August 2014. This change was implicated when the Plaintiff received a score of 78% in NUR 344 for the 2014-2015 Spring Term, having already withdrawn from the course during the 2013-2014 Fall Term. According to the Plaintiff, the second sentence of the policy required the School to permit her to pass under the 75% standard that was in place when she first entered the School. Her reasoning is that the corollary of the second sentence of the Policy is that students who do *not* discontinue their studies for a semester or more will continue to be responsible for the standards they faced at the time of their original enrollment.

The Plaintiff essentially reads the second sentence as an exception to the first sentence, whereas the School interprets the second sentence as clarification for a unique set of circumstances. As the Plaintiff did not fall within those unique set of circumstances (discontinuation of the program and re-entry), the second sentence did not apply to her. The Plaintiff's interpretation would, in essence, nullify the School's right to change the program's requirements for students who were enrolled in the School at the time of the change. Any program changes would only impact students who entered the program, or re-entered it, after the effective date of any change to program requirements. But there would be no need for a reservation of a right to change the program's requirements if those changes only applied to students not yet enrolled. The Court agrees that the School's interpretation of the policy is the one that comports with the plain language.

Even if the policy was ambiguous, there is no evidence in the record that the School ever operated under the construction of the policy that the Plaintiff advances in this litigation. To the contrary, Deacon Jezierski provided a sworn statement that the School did not have a policy stating that a nursing student who does not discontinue program studies for a semester or more will only be held to the requirements that were in place when the student first enrolled. (Suppl. Aff. of John R. Jezierski ¶ 3, ECF No. 43-1.) The Plaintiff has not presented any evidence that refutes this.

Likewise, with respect to the particular change at issue, nothing in the record suggests that the School shared the Plaintiff's understanding of its impact on students who were already enrolled in the School. While the Plaintiff may not agree with the School's implementation, a plaintiff cannot establish pretext merely by showing that defendant's decision was "mistaken" or

9

"ill considered." *Farrell v. Butler Univ.*, 421 F.3d 609, 613 (7th Cir. 2005) (quoting *Jordan v. Summers*, 205 F.3d 337, 343 (7th Cir. 2000)). Just as the court is "not a super-personnel board" with respect to the evaluation of employment decisions, it is "not a super-enrollment committee" with respect to educational programs. *Brewer*, 479 F.3d at 922. "[W]hen an employer articulates a plausible, legal reason for [its action], it is not [the court's] province to decide whether that reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for [its action]." *Silverman v. Bd. of Educ.*, 637 F.3d 729, 738 (7th Cir. 2011) (internal quotation marks omitted). There has been no showing that the School did not honestly believe its stated reason for the dismissal, and no inconsistency in the stated reason.

The School made the decision to change its passing standard from 75% to 80% after comparing its grading requirements to other nursing schools and reviewing best practice literature. At the time it made this change, school personnel, including Deacon Jezierski, discussed whether exemptions to the new policy should be given to students who had enrolled when the passing standard was 75%. (Jezierski Aff. ¶ 15, ECF No. 31-2.) Ultimately, the Governance Committee, which possessed authority to change the School's policies and procedures, decided against an exemption out of concern that such an exemption would unfairly require students in the same class to meet different passing requirements despite taking the same test covering the same material. Additionally, the higher standard would provide all students with a greater opportunity to meet licensure requirements, which were anticipated to become more difficult in 2014.

An email, sent to all students on March 21, 2014, announced the grading and graduation policy changes. The communication contained no indication that the new policy would not apply

to students who were already enrolled. All students were informed that the new standard would commence on the first day of the 2014-2015 academic year. The Plaintiff has not identified any students who were exempt from the new grading policy, regardless of when they first entered the School.

The Plaintiff has not identified "such weaknesses, implausibilities, inconsistencies, or contradictions in the purported reasons that a jury could find them unworthy of credence and hence infer that [the School] did not act for the asserted non-discriminatory reasons." *Fane v. Locke Reynolds, LLP*, 480 F.3d 534, 541 (7th Cir. 2007). She has not shown that her dismissal for failing to meet the 80% passing requirement was guided by motives other than those identified by the School, much less that it was instead guided by an improper motive. The Plaintiff identifies some conduct she describes as "racially motivated," but it does not carry the day. The only complaint the Plaintiff makes about the instructor of the NUR 344 course, Professor Santee, is that she told another student that the Plaintiff had reported the student for an honor code violation. The other student was white. The particular race of the involved students does not turn Santee's action into an act of race discrimination. Moreover, it has no connection to the Plaintiff's academic performance.

The Plaintiff states that another professor, Professor Pena, was rude to her and to other African American students, but that she did not witness Pena treat Caucasian students in the same way. The Plaintiff's testimony is not supported by specific instances. *See Payne v. Pauley*, 337 F.3d 767, 773 (7th Cir. 2003) (stating that conclusory allegations, unsupported by specific facts, will not create genuine issues for trial). In any event, remarks unrelated to an adverse decision, by someone who is not involved in the decision, is not evidence that the decision was

motivated by discrimination. *Hunt v. City of Markham, Ill.*, 219 F.3d 649, 652 (7th Cir. 2000); *see also Teruggi v. CIT Grp./Capital Fin., Inc.*, 709 F.3d 654, 661 (7th Cir. 2013) (noting that comments do not raise an inference of discrimination unless they are made by the decision-maker, around the time of the decision, and in reference to the adverse action) (citing *Hemsworth v. Quotesmith.Com, Inc.*, 476 F.3d 487, 491 (7th Cir. 2007)). Pena was not a decision-maker in connection with the Plaintiff's dismissal from the School, either during the initial decision or during the appeal process. The Plaintiff has not identified any comments having a racial character or purpose made either in connection with the School's decision, or by a person involved in the decision. The Plaintiff's race was never mentioned during or in conjunction with any action taken toward her. The Court can find no basis upon which a jury could infer that the treatment the Plaintiff identifies as racially motivated had any impact on the School's decision. *See, e.g., Paz v. Wauconda Healthcare & Rehab. Ctr., LLC*, 464 F.3d 659, 666 (7th Cir. 2006) (noting that how recent the comments were, how extreme, and who made the remark are pieces of evidence that inform whether the plaintiff has established an inference of discrimination).

Because the Plaintiff is claiming intentional discrimination on the basis of her race, the Court finds it noteworthy that the Plaintiff has not attempted to identify any person outside of her protected class who was treated more favorably than she was treated to "suggest that she was singled out for worse treatment." *Crawford v. Ind. Harbor Belt RR. Co.*, 461 F.3d 844, 846 (7th Cir. 2006). The Court does not know how many other, if any, nursing students were dismissed from the program for the same reason that the Plaintiff was dismissed. The record does show that three of the forty-two students enrolled in the 2014-2015 Spring Term NUR 344 course were African American. Although sixteen students did not pass the course, the Plaintiff is the only

African American who did not pass. Fourteen of the students who did not pass were Caucasian. In the end, the Plaintiff cannot refute that her "problems were not related to [her] race—they were related to [her]. The fact that [s]he is a member of a protected class does not transform them." *Herron v. DaimlerChrysler Corp.*, 388 F.3d 293, 303 (7th Cir. 2004).

A genuine issue of material fact exists only where there is enough evidence that a reasonable jury could return a verdict in favor of the nonmoving party. *Harper v. C.R. England, Inc.*, 687 F.3d 297, 306 (7th Cir. 2012). The Court finds that a reasonable juror would not be able to conclude from the evidence that the School's decision to dismiss her from the nursing program was motivated by her race.

## CONCLUSION

For the reasons stated above, the Court GRANTS the Defendant's Motion for Summary Judgment [ECF No. 30]. Because the exhibit that the Defendant has requested to be stricken does not impact the outcome of the case, the Court TERMS AS MOOT the Defendant's Motion to Strike [ECF No. 44]. The Clerk is directed to enter judgment in favor of the Defendant and against the Plaintiff.

SO ORDERED on June 5, 2017.

                                              s/ Theresa L. Springmann
                                              CHIEF JUDGE THERESA L. SPRINGMANN
                                              UNITED STATES DISTRICT COURT